UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTIAN RUSSELL, | Case No. 22-10503 |
| Plaintiff, | Thomas L. Ludington |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18, 19)</u>**

Plaintiff Christian Russell brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 19), and the administrative record (ECF No. 11).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's

motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner's decision.

I.  DISCUSSION

   A.   **Background and Administrative History**

This is Plaintiff's second application for disability benefits. In the application before the Court, Plaintiff alleges his disability began on June 1, 2019, at the age of 50. (ECF No. 11-2, PageID.283). On June 13, 2019, he applied for supplemental security income and disability insurance benefits. (*Id.*). In his disability report, he listed ailments which diminished his ability to work. The ailments included: post-traumatic stress disorder, depression, and anxiety. (ECF No. 11-6, PageID.553). His application was denied on September 9, 2016.

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On November 12, 2020, ALJ Donald D'Amato held a hearing, at which Plaintiff and a vocational expert ("VE"), Marie Barhydt, testified. (ECF No. 11-2, PageID.303-31). On January 21, 2021, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.283-95). Plaintiff later submitted a request for review of the hearing decision. On January 7, 2022, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.31). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 8, 2022.

**B.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2019, the alleged onset date. (*Id.* at PageID.286). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease and osteoarthritis, right foot osteoarthritis, depressive disorder, borderline personality disorder, and post-traumatic stress disorder. (*Id.*). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.286-88). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . [except he] requires an unskilled entry-level job involving simple, routine tasks that can be learned on the job within thirty days or less, that is non-fast-rate production, defined as involving no conveyor belt or assembly line work and no hourly quotas. He cannot function as a member of a discrete team but can have occasional interaction with co-workers and supervisors, with contact largely superficial. He can have no direct interactive contact with the general public. He is limited to a "low stress" environment, defined as

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> having only occasional changes in the work setting. He can lift and/or carry ten pounds frequently and twenty pounds occasionally (from very little up to one third of an 8-hour workday); stand and/or walk (with normal breaks) for six hours in an 8-hour workday, but can do so for only thirty minutes at one time before needing to sit for two minutes before resuming standing and/or walking while remaining on task; and sit (with normal breaks) for six hours in an 8-hour workday. He can perform pushing and pulling with the upper and left lower extremities, within the aforementioned weight restrictions, for two thirds of an 8-hour workday, but can only occasionally do so with the right lower extremity. He can perform activities requiring bilateral manual dexterity for both gross and fine manipulation, with handling and reaching, for two thirds of an 8-hour workday. He needs to avoid hazards in the workplace, such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace, such as boxes on the floor or ajar doors. He needs to be restricted to a work environment with good ventilation that allows him to avoid frequent concentrated exposure to extreme heat/cold and high humidity. He can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl, but needs to avoid climbing ladders, ropes, and scaffolds.

(*Id.* at PageID.288-93). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.293). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as router, general office clerk, and small parts assembler. (*Id.* at PageID.294-95). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since June 1, 2019, through the

date of the decision.

### C. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff makes two arguments on appeal: (1) the ALJ did not properly evaluate the severity of his subjective complaints related to his mental functioning under Social Security Ruling ("SSR") 16-3p and (2) the RFC is not supported by substantial evidence because (a) it is internally inconsistent with regard to whether Plaintiff can perform light work and (b) does not adequately address his treating psychiatrist's opinion.

#### 1. Subjective Complaints

Plaintiff argues that the ALJ did not meet his burden of articulating how his subjective complaints conflict with the record, relying instead on a mere recitation of activities and portions of medical records to support the determination. His argument is restricted to his complaints of suicidal ideation, feelings of anxiousness, low mood, sleep disturbance, and difficulty interacting with others. He contends that the ALJ did not "link" the statements he found not credible to specific evidence in the record to support his decision. (ECF No. 18, PageID.2052). For instance, while the ALJ noted normal attention and adequate judgment in mental status examinations, Plaintiff asserts that the ALJ ignored other portions of those treatment records that indicate suicidal ideation or that Plaintiff was admitted for inpatient treatment. (*Id.* at PageID.2053). Plaintiff states that the ALJ did not address medication side effects or the duration and consistency of his mental health treatment. (*Id.* at PageID.2054-55).

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917 (6th Cir. 2011). First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. The ALJ here found Plaintiff's impairments could reasonably be expected to produce his symptoms.

Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1); *see also* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. Beyond medical evidence, the ALJ should consider seven factors. These factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p, 2016 WL 1119029, at * 7. The ALJ need not exhaustively discuss each of these factors or all of the evidence in the record but need only acknowledge the factors and discuss the evidence that supports his decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each

9

[factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints.") (citation omitted).

The ALJ found Plaintiff's statements related to the intensity, persistence, and limiting effects of his symptoms "not entirely consistent with the medical evidence and other evidence in the record" for the reasons explained in the decision. (ECF No. 11-2, PageID.289). The ALJ later discussed Plaintiff's complaints, his reported activities, treatment records, and the opinion evidence that cut against Plaintiff's subjective complaints.

The ALJ began with an acknowledgment of Plaintiff's subjective complaints and activities. He listed that Plaintiff described feeling anxious and overwhelmed, with a low mood and sleep disturbance during mental health care that he regularly attended.[3] (ECF No. 11-2, PageID.290). The ALJ then recounted Plaintiff's statements that he has maintained contact with some friends and is able to travel in and around the community, and goes shopping when necessary. (ECF No. 11-2, PageID.290). He noted that Plaintiff was engaged in group therapy during the relevant period and attended classes for some time in 2019. (*Id.*). Despite his symptoms, Plaintiff has had no apparent difficulty interacting with treatment

---

[3] Plaintiff claims that the ALJ did not consider his consistent and long-term treatment. (ECF No. 18, PageID.2054). This claim is belied by the ALJ's express acknowledgment of Plaintiff's "regular mental health care," (ECF No. 11-2, PageID.290), and the ALJ's citation to mental health treatment notes from the relevant period.

providers and there was no indication of difficulty interacting with classmates in 2019. (*Id.* at PageID.287). The ALJ also stated that Plaintiff experienced some drowsiness from his medication. (*Id.* at PageID.290).

Next, the ALJ discussed the medical evidence. He noted that mental status examinations showed intact attention and concentration, and fair judgment and insight, but he exhibited an anxious or depressed mood. Treatment providers suggested that many of Plaintiff's feelings were a result of life stressors such as losing his job and home, rather than psychiatrically based. (*Id.*). The ALJ noted that Plaintiff did not require inpatient care or emergency hospitalization for mental health.[4]

Finally, the ALJ addressed the psychiatric opinion evidence, beginning with the State agency reviewing psychologists. Among other things, Drs. DeLoach and Gerl opined that Plaintiff retained the capacity to perform simple, repetitive tasks,

---

[4] Plaintiff disputes this. He asserts that he presented for emergency psychiatric treatment twice between November 2017 and January 2018. (ECF No. 18, PageID.2055). These dates, however, predate the alleged onset date of June 1, 2019. Medical evidence that predates the alleged onset of disability is generally of limited relevance, but it can still be probative when it "shows findings indicative of an ongoing or chronic impairment that does not improve or fluctuate." *Hill v. Comm'r of Soc. Sec.*, 2018 WL 1404416, at *8 (E.D. Mich. Feb. 27, 2018) (internal quotation marks omitted). Plaintiff did not argue or bring forth evidence that his hospitalizations reflect ongoing or chronic impairment that does not improve or fluctuate. Notably, the last inpatient treatment was about three years before the ALJ's decision, which stands in opposition to the notion that the hospitalization reflects ongoing impairment that does not improve or fluctuate. Thus, the undersigned cannot say the ALJ erred by failing to rely on those hospitalizations in the decision.

but would need to work alone or with minimal contact with coworkers and the public. The ALJ found that opinion "somewhat persuasive." (*Id.* at PageID.292).

He then addressed Plaintiff's treating psychiatrist, Dr. Audu's, opinion. Dr. Audu opined that Plaintiff had moderate limitation in the ability to manage his psychiatrically based symptoms, but no more than mild limitation in responding appropriately to demands or changes in the workplace or setting realistic goals. She found mild limitation in working at an appropriate and consistent pace, and working in coordination with or in proximity to others without interrupting or being distractive. Dr. Audu opined Plaintiff had the following limitations in social interaction: extreme limitations in keeping social interactions free of sensitivity or suspiciousness; moderate limitation in handling conflicts with others and responding to requests, suggestions, criticism, correction, or challenges; and no more than mild limitation in asking for help when needed. Dr. Audu stated that Plaintiff is easily triggered by perceived threats or criticism from others. (*Id.* at PageID.292-93). The ALJ found this opinion "somewhat persuasive" because Dr. Audu's treatment notes are consistent with Plaintiff having mild to moderate limitations in all the areas of mental functioning. (*Id.* at PageID.293). That said, the ALJ observed that medical records do not show such significant limitation in social interaction. Examples noted are Plaintiff's good interactions with medical providers and in group therapy, maintaining contact with friends, his ability to

travel in the community, and the lack of records indicating he has been hostile or aggressive towards others. (*Id.*).

In his discussion of the record evidence, the ALJ addressed all the factors listed in SSR 16-3p. His discussion of the evidence provides substantial evidence for the determination that Plaintiff is not quite as limited by his mental impairments as he suggests.

Plaintiff's argument, in substance, is that there is evidence that supports his statements that the ALJ failed to address. As much as this is an invitation to the Court to reweigh the evidence, the Court will not do so. *Avers v. Kijakazi*, 2021 WL 4291228, at *6 (N.D. Ohio Sept. 21, 2021) ("To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own RFC determination, such an invitation exceeds the scope of this court's review."). That said, an ALJ cannot ignore evidence favorable to Plaintiff. But the ALJ did not do that here.

The ALJ did not misconstrue the records he relied on. The mental health treatment notes reflect depressed or anxious mood, but otherwise largely normal mental status examination. (*See, e.g.*, ECF No. 11-9, PageID.1701, 1704, 1706). There are notations in these records that reflect Plaintiff's mental/social limitations, such as feeling triggered by unruly passengers on public transportation.[5] (ECF No.

---

[5] At this visit, Plaintiff again had intact attention and concentration, fair insight and judgment, and linear thought process. (ECF No. 11-9, PageID.1719-20).

11-9, PageID.1719). In other records, his ability to communicate with and be around others did not appear so limited, such as when Plaintiff was noted to have "participated appropriately in group activities" during group therapy. (*See, e.g.*, *id.* at PageID.1700, 1703). Plaintiff's argument that the ALJ "cherry-picked" good observations at appointments is not well taken. Such arguments are "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")).

The ALJ did not ignore notations evidencing mental impairment and limitation. In discounting Plaintiff's subjective complaints, the ALJ did not say that Plaintiff had no limitations in social interaction. Rather, the ALJ concluded that Plaintiff has limitations and gave several social interaction limitations in the RFC to account for Plaintiff's limitation. The ALJ's conclusion that Plaintiff's statements are inconsistent with the record is supported by substantial evidence.

2. RFC

Plaintiff's next argument is separated into two parts. First, he argues that the RFC for light work is internally inconsistent with light work. Second, he argues

14

that the ALJ did not sufficiently explain his decision to partially discount treating psychiatrist Dr. Audu's opinion.

### a. Light Work

The ALJ crafted an RFC for a reduced range of light work, as it is defined in 20 C.F.R. § 404.1567(b). The regulation defines light work as involving "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The regulation explains that, to be considered capable of a *full range* of light work, the claimant "must have the ability to perform substantially all of these activities." *Id.* In the RFC, the ALJ found that Plaintiff could perform a *reduced range* of light. The limitations included that Plaintiff could (1) stand or walk for six hours in a workday, but could do so only for thirty minutes at one time before needing to sit for two minutes; (2) sit for six hours in a workday; (3) perform pushing and pulling with the upper and lower extremities for two thirds of the workday, but could only occasionally do so with the right lower extremity. (ECF No. 11-2, PageID.288).

Plaintiff argues that, per the RFC, Plaintiff is unable to perform "substantially all" of the exertional and non-exertional requirements of light work, thus the RFC is inconsistent with light work.

The undersigned agrees with the Commissioner that Plaintiff appears to overlook or misconstrue the significance of the phrase "substantially all" in the

15

regulations. The regulations do not require a claimant to be able to perform substantially all of the requirements of an exertional level. The claimant must be able to perform "substantially all" of the requirements if the claimant is found capable of a *full range* of light work. The ALJ found Plaintiff capable of a *reduced range* of light work. In other words, the ALJ found that Plaintiff cannot perform substantially all of the exertional requirements. It is not error for an ALJ to craft an RFC for a reduced range of light work with limitations.

b. Dr. Audu's Opinion

Plaintiff accuses the ALJ of providing a "terse and conclusory explanation" for finding Dr. Audu's opinions "somewhat persuasive." (ECF No. 18, PageID.2060). He contends that the ALJ's citation to his interactions in therapy, contact with friends, and traveling in the community do not equate to an ability to sustain a 40-hour workweek.

The ALJ is directed to assess the persuasiveness of both treating and non-treating medical evaluations based on how well they are supported by the rest of the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole;

16

relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c), 416.920c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to . . . explain" the consideration given to the remaining factors. §§ 404.1520c(a-b); 416.920c(a-b).

In the view of the undersigned, the ALJ's treatment of Dr. Audu's opinion is proper and is supported by substantial evidence. In assessing the psychiatrist's opinion, the ALJ agreed that the treatment notes were consistent with Plaintiff having mild to moderate difficulties in all areas of mental functioning, with the "biggest cause of concern" being social interaction. (ECF No. 11-2, PageID.293). The ALJ concluded, however, that the medical records do not show such significant limitations in social interaction. Throughout the decision, the ALJ discussed Plaintiff's normal interaction with mental health providers and group therapy members, his maintaining contact with some friends, and his ability to travel in and around the community. (*Id.*). By pointing to Plaintiff's social abilities demonstrated in the record, the ALJ addressed the consistency and supportability of Dr. Audu's opinion.

17

Elsewhere in the decision the ALJ noted largely normal mental status examinations that are not consistent with Dr. Audu's more severe limitations. He also gave some weight to the State agency psychologists who opined that Plaintiff could perform simple and repetitive tasks with little to no contact with coworkers and the public. (*Id.* at PageID.292). Dr. Audu's more limiting opinion is inconsistent with and not supported by this evidence. It is not problematic that the ALJ did not cite this evidence again in his discussion of Dr. Audu's opinion. It would be a needless formality to require the ALJ to repeat medical evidence throughout the decision. And, it is well-settled that the Court reads the ALJ's opinion as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion).

The ALJ cited substantial evidence in support of his persuasiveness determination, and thus the determination should be affirmed. There may be substantial evidence in support of Plaintiff's position, but that is not reason to remand the decision. *Blakley*, 581 F.3d at 406 (citation omitted).

### F. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 25, 2023                             s/Curtis Ivy, Jr.
                                                   Curtis Ivy, Jr.
                                                   United States Magistrate Judge